# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Jeffrey Nicholas Aase,

Civ. No. 16-3101 (MJD/BRT)

Petitioner,

v.

Thomas Roy, Commissioner of Corrections,

**REPORT AND RECOMMENDATION**

Respondent.

Jeffrey Nicholas Aase, 1101 Linden Lane, Faribault, MN 55021, *pro se* Petitioner.

Greg T. Kryzer, Esq., Assistant Wright County Attorney, counsel for Respondent.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Jeffrey Nicholas Aase's *pro se* Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Aase was convicted on six counts of second-degree criminal sexual conduct involving his minor stepdaughters in Wright County District Court. *State v. Aase*, No. A13-2200, 2015 WL 648172, at *1 (Minn. Ct. App. Feb. 17, 2015). Petitioner's primary claim is that his privately-retained trial counsel was ineffective due to a conflict of interest, which arose when he applied for a position with the Wright County Attorney's Office four days before trial. (Doc. No. 1, Habeas Pet. 3–6; Doc. No. 2, Mem. of Law in Supp. of Habeas Pet. ("Pet. Mem.").) The Respondent moves to dismiss. (Doc. No. 7.) For the reasons stated below, this Court recommends that Respondent's motion to dismiss be granted.

**I.     Background**

Petitioner's trial commenced on August 13, 2012. (Doc. No. 11, Resp't App. 11.) Four days before trial and without informing Petitioner or the court, Petitioner's privately-retained trial counsel applied for a position at the Wright County Attorney's Office. *Aase*, 2015 WL 648172, at *1. After evidence closed, trial counsel had lunch with the prosecutor while the jury was deliberating. *Id.* Trial counsel told the prosecutor that he had applied for the position, and the prosecutor wished him good luck. *Id.* On August 16, 2012, the jury found Petitioner guilty on all counts. *Id.*

Approximately eighty candidates applied for the assistant county attorney position. *Id.* About two weeks after the trial, Petitioner's trial counsel was interviewed along with seven others. *Id.* Trial counsel received a second interview and accepted an offer of employment. *Id.* He only worked as an Assistant Wright County Attorney from October 1, 2012 until November 30, 2012. (Resp't App. 13.)

Before Petitioner's sentencing, which was scheduled for November 5, 2012, trial counsel contacted the Minnesota Board of Professional Responsibility about whether he could continue representing Petitioner. (*Id.* at 13-14.) The Board advised him that a conflict was created by his new position as an Assistant Wright County Attorney. (*Id.* at 13.) Trial counsel then informed Petitioner that he could not represent him at sentencing. *Aase*, 2015 WL 648172, at *1. Petitioner moved for a new trial, claiming that his trial counsel had a conflict of interest during his trial. *Id.* The district court denied this motion after an evidentiary hearing. *Id.* At sentencing, the district court imposed concurrent sentences of 90 months and 130 months on two of the charges. *Id.* The court of appeals

affirmed, and the Minnesota Supreme Court denied a petition for review on May 19, 2015. *Id.* Petitioner filed this action on September 16, 2016. (Doc. No. 1.)

## II. Analysis

### A. Standard of Review Under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief will not be granted with respect to any claim adjudicated on the merits in state court proceedings unless such adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Davis v. Grandlienard*, 828 F.3d 658, 664 (8th Cir. 2016). Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Under the "unreasonable application" clause, the writ can be granted "if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413.

"Clearly established Federal law" includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). An "unreasonable application" of those holdings "must be objectively unreasonable, not

3

merely wrong; even clear error will not suffice." *Id.* (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). To satisfy this high bar, a habeas petitioner is required to show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a 'presumption that state courts know and follow the law.'" *Woods*, 135 S. Ct. at 1376 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). On collateral review of state court convictions, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington*, 562 U.S. at 102–03).

### B. Ineffective Assistance of Counsel

A successful ineffective-assistance-of-counsel claim generally requires two showings: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–90 (1984). Under the first prong, Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citing *Strickland*, 466 U.S. at 694). Under the second prong, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

4

would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011). "This is a heavy burden." *Caban v. United States*, 281 F.3d 778, 781 (8th Cir. 2002).

In two pre-*Strickland* cases, however, the Supreme Court held that "the burden may be lighter for defendants who assert ineffective assistance of counsel because of a conflict of interest involving their attorney." *Id.* (citing and discussing *Holloway v. Arkansas*, 435 U.S. 475 (1978) and *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). In *Holloway*, the Court "addressed situations where the trial court is made aware of a potential conflict of interest before, during, or in some instances, after trial. Under those circumstances, the Court held the trial court has a duty to conduct a searching inquiry into the possibility of a constitutional violation arising from that conflict." *Id.* (citing *Wood v. Georgia*, 450 U.S. 261, 272 n.18 (1981)). If the trial court fails to undertake this inquiry, the conviction is automatically reversed "upon a showing of possible prejudice." *Id.* (quoting *Atley v. Ault*, 191 F.3d 865, 873 (8th Cir. 1999)); *Holloway*, 435 U.S. at 490 ("[A] rule requiring a defendant to show that a conflict of interests—which he and his counsel tried to avoid by timely objections to the joint representation—prejudiced him in some specific fashion would not be susceptible of intelligent, evenhanded application.").

In *Cuyler*, the Court "addressed situations where the trial court is never made aware of the conflict of interest." *Id.* In this situation, the defendant must show that defense counsel "actively represented conflicting interests," *Cuyler*, 446 U.S. at 350, and that the conflict "adversely affected his lawyer's performance." *Id.* at 348. If these two

5

factors are shown, prejudice is presumed. *Caban*, 281 F.3d at 781 (citing *Cuyler*, 446 U.S. at 349–50; *Glasser*, 315 U.S. 60, 76 (1942)). This "almost per se rule of prejudice" applies when a defendant "raises the issue of a conflict of interest for the first time on appeal or in a motion for post-conviction relief. However, the Court has never applied *Cuyler*'s rule of presumed prejudice outside the context of multiple representation of codefendants or serial defendants." *Id.* at 781–82; *see also Morelos v. United States*, 709 F.3d 1246, 1252 (8th Cir. 2013) ("Since the decision in *Cuyler*, both the Supreme Court and [the Eighth Circuit] have cabined the lower burden in establishing prejudice to cases in which the alleged actual conflict of interest arose from counsel jointly representing multiple parties.") (citing *Noe v. United States*, 601 F.3d 784, 790 (8th Cir. 2010); *Mickens v. Taylor*, 535 U.S. 162, 174–75 (2002)).

This case does not involve a conflict arising from representing multiple parties. Rather than deciding whether the *Cuyler* analysis applies to conflicts other than those arising from joint or multiple representation, courts including the Eighth Circuit have tended to sidestep the issue by analyzing the claim under both *Strickland* and *Cuyler*. *See, e.g.*, *Morales*, 709 F.3d at 1252 ("[W]e decline to decide the issue here because we conclude Morelos's claims would fail under the standards of either *Cuyler* or *Strickland*."); *Noe*, 601 F.3d at 790 ("We need not decide whether *Cuyler* applies here, because Noe's ineffective assistance claim fails under either *Cuyler* or *Strickland*."); *Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004) ("Under either rule, Mr. Covey's ineffective-assistance-of-counsel claim fails.").

### 1. Minnesota Court of Appeals Decision

In resolving Petitioner's claim, the Minnesota Court of Appeals recognized that "the *Cuyler* test for ineffective assistance of counsel is typically applied to conflict cases involving multiple representation." *Aase*, 2015 WL 648172, at *2. The court found that *Strickland* should apply, not *Cuyler*, for two primary reasons: (1) Petitioner failed to cite cases that apply *Cuyler* to the scenario at issue here, where defense counsel applies for a job in the prosecuting attorney's office, and (2) Petitioner was unaware of the conflict and thus could not have objected at trial. *Id.* Even so, the court explained that the result would be the same under either test. *Id.*

Under the first prong of *Strickland*, the court of appeals held that trial counsel's performance was not unreasonable or deficient. *Id.* at *3. The court noted that trial counsel "called his college friend, an assistant Wright County attorney, to ask about the working environment in the county attorney's office, but otherwise did not participate in job discussions or interviews until several weeks after the conclusion of [Petitioner's] trial." *Id.* The court rejected Petitioner's argument that trial counsel "would not have wanted to outshine the prosecutor" given his pending job application because an "attorney who 'rolls over' on his client is not an attractive candidate." *Id.*

Considering *Cuyler*, the court of appeals emphasized that "the best practice is to inform the client and the court of any potential conflict of interest" because it "allows the client to make a decision on representation and the court to perform a proper inquiry into the potential conflict," but even so, the court found that "the act of submitting a job application, without more," does not create a "per se conflict." *Id.* Instead, the conflict

7

"would have existed at . . . sentencing because counsel had accepted the position by that time." *Id.* However, one judge, concurring in the result, would have found that "the conflict and improper conduct occurred when defense counsel filed an application for the opening in the office of the Wright County Attorney." *Id.* at *5 (Minge, J., concurring specially) (internal citations omitted). His view was that "[o]nce one's defense attorney has applied for a position with the prosecution, that attorney's loyalty is subject to question. There is an appearance of impropriety." *Id.*[1]

Nevertheless, under *Strickland*, the court (including Judge Minge) was "unpersuaded that [Petitioner] met his burden of showing that unreasonable representation affected the outcome of the case." *Id.* at *3. While Petitioner pointed to "ways in which trial counsel could have performed differently," the court's "careful review of the trial transcript" showed that "trial counsel participated professionally throughout the trial process and that the alleged deficiencies cannot be shown to be anything other than trial tactics and strategy." *Id.* at *5.

In sum, the court of appeals held that Petitioner failed to show that trial counsel's performance fell below an objective standard of reasonableness, and even if the performance was deficient, Petitioner failed to show that "but for trial counsel's performance, the trial outcome would have been different." *Id.* (citing *Strickland*, 466

---

[1] Despite Judge Minge's strong and appropriately empathetic language about the appearance of impropriety, he concluded that "in this case the legal system properly found that appellant's trial attorney provided not only professional, but good quality criminal-defense representation to appellant and that his conflict of interest did not adversely affect his performance, let alone the result." 2015 WL 648172, at *6.

8

U.S. at 687–88). Alternatively under *Cuyler*, the court concluded Petitioner did not show that trial counsel's job application actually affected his performance. *Id.* (citing *Cuyler*, 446 U.S. at 348). Therefore, the court affirmed Petitioner's conviction.[2]

## 2. Petitioner's Conflict of Interest Claim

Petitioner argues that his trial counsel's conflict was a "per se" constitutional violation, and that prejudice should therefore be presumed under *Holloway*. (Pet. Mem. 5–15; Pet. Mem. 12 ("The Supreme Court precedent for deciding the issue in Petitioner's case is thus rooted not in *Cuyler* and *Strickland* as the Minnesota courts decided, but rather in the more general principles announced in *Glasser* and *Holloway*.").) *Holloway* does not apply, however, because this is not a multiple or serial representation case. *See Mickens*, 535 U.S. at 168 ("*Holloway* thus creates an automatic reversal rule only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict."). Therefore, Petitioner is not entitled to automatic reversal under *Holloway*.[3]

---

[2] It could be argued that the Minnesota Court of Appeals should have addressed Petitioner's claim under *Holloway*, not *Cuyler*, due to the fact that Petitioner raised the conflict issue after trial but before his direct appeal. *See Caban*, 281 F.3d at 781–82 (explaining that *Holloway* "addressed situations where the trial court is made aware of a potential conflict of interest before, during, or in some instances, after trial," whereas *Cuyler* applies when "a defendant raises the issue of a conflict of interest for the first time on appeal or in a motion for post-conviction relief"). For the reasons stated herein, however, Petitioner is not entitled to relief under *Holloway*, *Cuyler*, or *Strickland*.

[3] In *Caban*, the court stated that *Holloway*'s "per se rule applies regardless of the nature of the conflict." 281 F.3d at 781 (citing *Atley v. Ault*, 191 F.3d 865, 870 n.4 (8th Cir. 1999)). Just over a month later in *Mickens*, however, the Supreme Court made clear
(Footnote Continued on Next Page)

9

Neither is he entitled to relief under *Cuyler*. As the Supreme Court explained in *Mickens*:

> Lest today's holding be misconstrued, we note that the only question presented was the effect of a trial court's failure to inquire into a potential conflict upon the [*Cuyler v.*] *Sullivan* rule that deficient performance of counsel must be shown. The case was presented and argued on the assumption that (absent some exception for failure to inquire) *Sullivan* would be applicable—requiring a showing of defective performance, but *not* requiring in addition (as *Strickland* does in other ineffectiveness-of-counsel cases), a showing of probable effect upon the outcome of trial. That assumption was not unreasonable in light of the holdings of Courts of Appeals, which have applied *Sullivan* 'unblinkingly' to 'all kinds of alleged ethical conflicts.'
>
> . . .
>
> It must be said, however, that the language of *Sullivan* itself does not clearly establish, or indeed even support, such expansive application. '[U]ntil,' it said, 'a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.' Both *Sullivan* itself, and *Holloway*, stressed the high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice. Not all attorney conflicts present comparable difficulties.

*Mickens*, 535 U.S. at 174–75 (internal citations omitted) (emphasis in original). Thus, it is not clearly established federal law that *Cuyler*'s presumption of prejudice applies to the conflict at issue herein. As a result, Petitioner cannot obtain habeas relief based on an alleged misapplication of that standard.

Finally, the Minnesota Court of Appeals correctly applied the *Strickland* standard to Petitioner's claim. For example, the court did not fault trial counsel for how he handled

---

(Footnote Continued From Previous Page)
that *Holloway* only applies to cases involving multiple concurrent representation. 535 U.S. at 168, 174–75.

the state's proffer of "relationship evidence . . . , specifically about prior domestic abuse, to explain the victims' mother's delay in reporting the abuse to police." *Id.* at *4. This evidence was concededly admissible, and the failure to object to admissible evidence does not support a claim of deficient performance. *Id.* Moreover, trial counsel requested a cautionary instruction at the close of trial instead of when it was introduced, perhaps to avoid drawing attention to potentially harmful evidence. *Id.* This is a matter of trial strategy that is not subject to challenge in the context of an ineffective assistance claim under *Strickland*. *Id.* The court also credited trial counsel for how he handled a different type of relationship evidence, specifically evidence that Petitioner "choked or put his hands around the neck of C.S., the victims' sibling, arguing it was too prejudicial to admit in a case involving sexual conduct, and not domestic abuse." *Id.* at *4. The court explained that the "objection to the alleged choking of C.S. was appropriate" because "C.S. was not a victim in this prosecution and the evidence was graphic." *Id.* "The district court overruled the objection in a preliminary ruling but gave trial counsel an opportunity to raise it again, which he did before C.S. testified, arguing that choking is not similar conduct." *Id.* Thus, the court found that "trial counsel's failure to object to the admission of some relationship evidence . . . was not unreasonable." *Id.* Finally, the court noted that trial counsel also called several witnesses and cross-examined many of the state's witnesses. *Id.* at *5. Ultimately, the court concluded that trial counsel "zealously

represented" Petitioner "throughout the criminal proceeding," and there was no deficient performance that prejudiced him under *Strickland*. *Id.*[4]

For these reasons, the state courts' resolution of Petitioner's ineffective-assistance-of-counsel claim based on his trial counsel's conflict of interest was not contrary to or an unreasonable application of Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

Petitioner also attempts to argue that the state courts' resolution of this claim was based on an unreasonable determination of facts. (Pet. Mem. 15–18); *see* 28 U.S.C. § 2254(d)(2) (stating that a writ of habeas corpus may be granted if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The state court's factual findings, however, are presumptively correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioner fails to overcome this presumption. Therefore, Petitioner is not entitled to habeas relief on this basis.

### 3. Remaining Claims

Petitioner's *pro se* memorandum includes a variety of arguments that could be considered separate from the only claim he exhausted in state court, *i.e.*, the conflict-of-interest claim. Petitioner did not raise these claims in state court, so they are defaulted as a matter of procedure. *Gray v. Netherland*, 518 U.S. 152, 162 (1996) ("[T]he procedural

---

[4] For similar reasons, the Minnesota Court of Appeals correctly determined that the conflict did not result in an "adverse effect" under *Cuyler*. *See United States v. Flynn*, 87 F.3d 996, 1001 (8th Cir. 1996) (stating that adverse effect requires "some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one").

bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim."). None of these claims have merit in any event.

For example, Petitioner argues that he was denied effective assistance of counsel because his privately-retained attorney did not represent him at sentencing. (Pet. Mem. 6.) It is "well-established that an indigent criminal defendant has no constitutional right to have a particular attorney." *United States v. Vargas*, 469 F. Supp. 2d 752, 760 (D.N.D. 2007) (citing *United States v. Gonzalez-Lopez*, 399 F.3d 924, 928–29 (8th Cir. 2005); *United States v. Espino*, 317 F.3d 788, 798–99 (8th Cir. 2003)). Petitioner was given a public defender for his initial hearing, but Petitioner was required to hire a private attorney for trial because he became employed in the interim and no longer qualified financially for a public defender. (Resp't App. 10.) When trial counsel was forced to recuse, Petitioner once again qualified for and received a public defender. (*Id.* at 14, 30.) Petitioner does not argue that his sentencing attorney rendered ineffective assistance.

Petitioner also argues that the state was "obliged to inform the court of the potential conflict and the court should have then been required to undertake an inquiry of whether there was prejudice." (Pet. Mem. 15.) In *Holloway*, the Supreme Court explained that "defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem." *Holloway*, 435 U.S. at 485. Assuming this obligation extends to the prosecution, the result would be the same because *Holloway* only applies to conflicts arising from multiple or serial representation, and Petitioner is therefore not entitled to *Holloway*'s presumption of prejudice. Aside from the nature of

the conflict, what matters is whether "the trial court knows or reasonably should know that a particular conflict exists." *Cuyler*, 446 U.S. at 346. Petitioner offers no basis to suggest that the trial court knew or should have known about his trial counsel's job application during the course of the trial.

### C. Conclusion

The state court's resolution of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor did it result in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. *Id.* § 2254(d)(2). Therefore, this Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2254.

## III. Certificate of Appealability

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1); Rule 11(a), Rules Governing Section 2254 Cases. A COA should not be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Reasonable jurists would not debate that the Minnesota Court of Appeals correctly applied *Cuyler* and *Strickland* to Petitioner's claims. Therefore, this Court will recommend that a COA should not issue.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Respondent's Motion to Dismiss (Doc. No. 7) be **GRANTED**;

2. Petitioner's Petition for a writ of habeas corpus (Doc. No. 1) be **DENIED**;

3. Petitioner's request for a certificate of appealability be **DENIED**; and

4. This action be **DISMISSED WITH PREJUDICE**.

Date: May 1, 2017.

                                          *s/ Becky R. Thorson*
                                          BECKY R. THORSON
                                          United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.